UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DERRICK LEE BRYANT,<br><br>            Plaintiff,<br><br>     v.<br><br>CAROLYN COLVIN, Commissioner of Social Security,<br><br>            Defendant. | Case No. C13-1587-JCC-BAT<br><br>**REPORT AND RECOMMENDATION** |

Derrick Lee Bryant seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications.  He contends the ALJ erred by (1) rejecting the opinions of the treating and examining doctors, and (2) finding him not credible. Dkt. 20.  For the reasons discussed below, the Court recommends the case be **REVERSED** and **REMANDED** for further administrative proceedings.

**BACKGROUND**

Mr. Bryant is currently 48years old, has a high school education and has worked as a food service worker and cook. Tr. 172, 194.  On June 29, 2010, he applied for benefits, alleging disability as of January 1, 2006. Tr.172, 174.  His applications were denied initially and on reconsideration. Tr. 105, 108, 113, 115.  After conducting a hearing, the ALJ issued a decision

REPORT AND RECOMMENDATION - 1

on March 23, 2012, finding Mr. Bryant not disabled.  Tr. 12-31.  As the Appeals Council denied Mr. Bryant's request for review, the ALJ's decision is the Commissioner's final decision.  Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that Mr. Bryant had not engaged in substantial gainful activity since his alleged onset date; he had the severe impairments of diabetes mellitus and gout; and these impairments did not meet or equal a listed impairment.[2]  Tr. 17-20.  The ALJ found that Mr. Bryant had the residual functional capacity to perform sedentary work except no climbing of ladders, ropes or scaffolds; he can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs; he should avoid concentrated exposure to extreme cold or heat, wetness, humidity, noise, vibrations, fumes, dusts, and gases; and he should avoid even moderate exposure to hazards such as heights or moving machinery.  Tr. 20.  The ALJ found that Mr. Bryant was unable to perform any past relevant work but he could perform jobs that exist in significant numbers in the national economy.  Tr. 24.  The ALJ therefore concluded that Mr. Bryant was not disabled from his alleged onset date through the date of the decision.  Tr. 25.

## DISCUSSION

**A.    Medical opinions**

Mr. Bryant argues that the ALJ erred by rejecting the opinions of treating doctor George Heffner, M.D., and examining psychologists Richard Washburn, Ph.D., and Shawn Kenderdine, Ph.D.  Dkt. 20 at 1-3.  In general, the ALJ should give more weight to the opinion of a treating doctor than to that of a non-treating doctor, and more weight to the opinion of an examining doctor than to that of a non-examining doctor.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

1996).  Where it is not contradicted by another doctor, the ALJ may reject a treating or examining doctor's opinion only for "clear and convincing reasons."  *Id.* at 830-31.  Where contradicted, the ALJ may not reject a treating or examining doctor's opinion without "specific and legitimate reasons" that are supported by substantial evidence in the record.  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

   *1.   Dr. Heffner*

Dr. Heffner treated Mr. Bryant throughout the relevant period and completed multiple evaluations of Mr. Bryant's physical condition.  Dr. Heffner opined in October 2008, April 2009, November 2009, and August 2010 that Mr. Bryant could perform light work.  Tr. 368, 373, 380, 410.  He opined in May 2007, February 2008, June 2009, and February 2010 that Mr. Bryant could perform sedentary work.  Tr. 375, 384, 469, 473.  The ALJ found the opinions that Mr. Bryant could perform sedentary work more consistent with the treatment notes and therefore gave those opinions significant weight, and less weight to the opinions that he could perform light work.  Tr. 23.

On November 8, 2010, Dr. Heffner completed his final evaluation of Mr. Bryant's physical condition.  He opined that Mr. Bryant could stand for only 30 minutes in an 8-hour workday, due to weakness and dizziness caused by uncontrolled blood sugars.  He further opined that Mr. Bryant could sit for 5 hours in an 8-hour work day, and could lift 20 pounds

1  occasionally and 5 pounds frequently.  He opined that Mr. Bryant's diabetes was severe and
2  uncontrolled and he had no money to pay for any medicines, and that Mr. Bryant was unable to
3  work until his blood sugars were controlled.  And he opined that Mr. Bryant's condition was
4  deteriorating and he expected Mr. Bryant's condition to impair his work function for 8 months.
5  Tr. 435-36.  The ALJ gave this opinion little weight because it was a temporary work restriction.
6  Tr. 23.
7      Mr. Bryant argues that the ALJ's reason for rejecting the November 2010 opinion was
8  not sufficient because his condition was deteriorating and he had no money for needed
9  medication.  Dkt. 20 at 6.  He asserts that "the 8 month projection was subject to Plaintiff being
10 able to afford his medicines, and Plaintiff would be unable to sustain work until then."  *Id.* at 7.
11 He further asserts that the ALJ should have recontacted Dr. Heffner to determine if Mr. Bryant
12 had obtained medications and, if he had, if the medications had brought his blood sugar levels
13 down to the point that he could work.  *Id.*
14     A claimant may not be denied disability benefits because of his failure to obtain treatment
15 that would ameliorate his condition if he cannot afford that treatment.  *Gamble v. Chater*, 68
16 F.3d 319, 321 (9th Cir. 1995).  Moreover, where a claimant's condition is deteriorating, the most
17 recent medical report is the most probative.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201
18 (9th Cir. 2008) (citing *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986)).
19     Dr. Heffner first prescribed glyburide in March 2010, when Mr. Bryant's glucose levels
20 remained high at 296, even after Mr. Bryant had cut back on the sugars in his diet.  Tr. 345-46.
21 On November 3, 2010, Mr. Bryant returned to Dr. Heffner for an evaluation, but he had been
22 without his medications and his blood sugar levels were over 500 and therefore too high to read;
23 Dr. Heffner advised Mr. Bryant that he should go to the emergency room.  Tr. 399-400.  Five

REPORT AND RECOMMENDATION - 4

days later, Mr. Bryant returned for follow-up. Dr. Heffner noted that Mr. Bryant had been without medication since September 1 because he had no money and was unable to afford it. His blood sugar was very high at 408. Tr. 420-22. Dr. Heffner wrote his November 2010 opinion that day. Seven months later, in June 2011, Mr. Bryant returned and was again not taking his medications, although the treatment notes do not give a reason for this; his blood sugar was 428. Tr. 503. In January 2012, Mr. Bryant was taking his medications, but his blood sugar was still high at 291. Tr. 488.

The ALJ's dismissal of Dr. Heffner's November 2010 opinion as a temporary work restriction takes the opinion out of context, ignores the fact that Mr. Bryant was unable to afford treatment, and ignores Dr. Heffner's opinion that Mr. Bryant's condition was deteriorating. Moreover, Dr. Heffner limited all of his opinions to periods of time that ranged from 6 months to 10 months, and yet the ALJ did not reject any other opinions as temporary work restrictions. This in itself undermines the legitimacy of the ALJ's reason for rejecting the November 2010 opinion. It appears that Mr. Bryant's condition waxed and waned. Mr. Bryant's inability to afford his medications and Dr. Heffner's opinion that his condition was deteriorating were interrelated circumstances that the ALJ failed to consider. The ALJ's offhand dismissal of the opinion as a mere temporary work restriction ignores the nature and circumstances of Dr. Heffner's opinion. The ALJ's reason for rejecting the opinion was not specific or legitimate.

Where an ALJ fails to provide adequate reasons for rejecting a treating physician's opinion, the Court may credit that opinion as a matter of law. *See Lester*, 81 F.3d at 834. However, courts retain flexibility in applying the credit as true theory. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003). Where it is not clear from the record that the ALJ would be required to award benefits if the evidence were credited, the Court may remand for further

determinations. *Id.* Although crediting as true the improperly rejected opinion would require award of benefits, it was one of several opinions from Dr. Heffner, whose treatment of Mr. Bryant continued. For this reason, the Court concludes that remand for further consideration of Dr. Heffner's opinions, along with any new information from the doctor,[3] is the appropriate remedy.

### 2. Dr. Washburn and Dr. Kenderdine

Dr. Washburn examined Mr. Bryant in May 2011. He diagnosed depressive disorder, generalized anxiety disorder with PTSD, rule-out bipolar disorder, and alcohol dependence, and assigned Mr. Bryant a Global Assessment of Functioning (GAF) score of 45, indicating serious symptoms or a serious impairment in social, occupational, or school functioning. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. text rev. 1994). He opined that Mr. Bryant would have mild to moderate limitations in several areas of social and cognitive functioning, with severe limitations in his ability to communicate and perform effectively in a work setting, with or without public contact, and in his ability to maintain appropriate behavior in a work setting. Tr. 476-80. The ALJ gave this opinion little weight, finding that it was based primarily on Mr. Bryant's subjective report of his symptoms, which the ALJ found to be not always credible. Tr. 19.

An ALJ may give less weight to a medical opinion that is based to a large extent on a claimant's self-reports that have been properly discounted as incredible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). But an ALJ does not provide adequate reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's

---

[3] Mr. Bryant submitted additional information from Dr. Heffner to the Appeals Council, but it was not made a part of the record in this case. Tr. 2. Because the Court recommends remand of the case for further proceedings, the Court need not address the impact of this letter on the ALJ's decision, or Mr. Bryant's argument that the ALJ should have recontacted Dr. Heffner.

REPORT AND RECOMMENDATION - 6

complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). Dr. Washburn conducted a complete psychological assessment, including a mental status exam and Burns Mood Survey assessment, he reviewed medical records from Dr. Kenderdine, and he made his own clinical observations. He did not question the validity of Mr. Bryant's self-reports. The ALJ's reason for rejecting Dr. Washburn's opinion was not a legitimate one.

Dr. Kenderdine examined Mr. Bryant in December 2010. He diagnosed major depressive disorder, moderate, and alcohol dependence in partial remission, and assigned a GAF score of 54, indicating moderate symptoms or moderate difficulties in social, occupational, or school functioning. DSM-IV at 34. He opined that Mr. Bryant would have mild to moderate limitations in his social and cognitive functioning. Tr. 427-31. The ALJ gave this opinion little weight, finding that it was inconsistent with Mr. Bryant's treatment history, which shows that he was not on any psychiatric medications and he was not receiving any mental health treatment. The ALJ also found that Dr. Kenderdine's opinion was not supported by the mental status exam he administered, pointing out that during the interview Mr. Bryant was oriented and cooperative, his mood was mildly dysthymic with the full range of affect, and his thought process was logical and linear with no perceptual disturbances. Tr. 19.

Again, the ALJ may not penalize a claimant for his failure to obtain treatment he cannot afford. *Gamble*, 68 F.3d at 321. In general, the ALJ may not draw inferences from a claimant's failure to seek treatment without first considering any explanations the claimant may provide or other information in the case record that may explain this failure. SSR 96-7p. This is particularly true in the case of mental impairments, because a person suffering from a mental illness may not realize that he needs medication, or even that his "condition reflects a potentially

REPORT AND RECOMMENDATION - 7

serious mental illness." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  For this reason, it is "'a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"  *Id.* (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).  The record contains multiple references to Mr. Bryant's homelessness and inability to afford medical treatment.  The ALJ failed to explore possible reasons why Mr. Bryant did not receive mental health treatment before penalizing him for it.

In addition, an ALJ may not substitute his own interpretation of the medical evidence for the opinion of a medical professional.  *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999).  That is exactly what the ALJ did here, performing his own interpretation of Dr. Kenderdine's mental status exam, highlighting certain findings and ignoring others.  The ALJ did not give specific and legitimate reasons to reject Dr. Kenderdine's opinion.

At step two, the ALJ found that Mr. Bryant had the medically determinable mental impairments of depressive disorder, generalized anxiety disorder, and history of alcohol abuse, but that these impairments considered singly and in combination were not severe.  Tr. 18.  In so doing, the ALJ essentially rejected the opinions of the two examining doctors in favor of the opinions of the non-examining state agency consultants.  Tr. 19.  But a non-examining doctor's opinion is entitled to the least weight of all.  *Lester*, 81 F.3d at 830.  And the opinion of a non-examining doctor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining doctor.  *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

The step-two inquiry is "a *de minimis* screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  *Id.*  The opinions of Dr.

REPORT AND RECOMMENDATION - 8

Washburn and Dr. Kenderdine establish that Mr. Bryant's mental impairments at the very least met this threshold. The ALJ erred by rejecting them at this stage.

The Commissioner's argument that any error in the ALJ's analysis of these impairments was harmless is unpersuasive. The Commissioner asserts that the ALJ considered Mr. Bryant's mental impairments in formulating his residual functional capacity. Dkt. 21 at 12. But she fails to explain how this is so. The Commissioner also asserts that the ALJ limited Mr. Bryant to simple work with an SVP of one two and Mr. Bryant has not explained how his mental impairments preclude him from performing this work. *Id.* But Dr. Washburn and Dr. Kenderdine opined that Mr. Bryant had social and cognitive limitations that the limitation to simple, unskilled work does not necessarily account for. In any event, the Court cannot say with any confidence that the error in omitting any mental impairments at step two was nonprejudicial to Mr. Bryant or irrelevant to the ALJ's ultimate decision. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

**B.    Mr. Bryant's credibility**

Mr. Bryant argues that the ALJ erred in finding him not fully credible. Dkt. 20 at 13. The ALJ did not find that Mr. Bryant was malingering. Thus, the ALJ was required to provide clear and convincing reasons to reject his testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). An ALJ does this by making specific findings supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found that Mr. Bryant's noncompliance with treatment for his diabetes suggested that his symptoms were not as serious as he alleged. Tr. 22. Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment is a

clear and convincing reason to question a claimant's credibility. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But, again, a claimant's failure to obtain treatment he cannot afford cannot support an adverse credibility determination. *Orn*, 495 F.3d at 638. The record clearly shows that at various times Mr. Bryant, who was at times homeless, did not have funds to pay for his medications. The ALJ may not penalize him for this lack of funds.

The ALJ found that Mr. Bryant made inconsistent statements which detract from his credibility. Tr. 22. The ALJ pointed to differences between Mr. Bryant's reports of his daily activities, including his motivation for activities such as dressing, and between his testimony about the frequency of his gout attacks and the medical documentation of those attacks. Tr. 22-23. An ALJ may consider inconsistent statements about the symptoms as a factor in evaluating a claimant's credibility. *Smolen*, 80 F.3d at 1284. But here, where the ALJ has improperly discounted the claimant's mental impairments at step two, the Court cannot say that the ALJ's assessment of Mr. Bryant's subjective reports would be the same once the ALJ has properly accounted for those impairments.

Finally, the ALJ found that the objective medical evidence did not support the degree of impairment Mr. Bryant alleged. Tr. 21. Although lack of objective medical evidence may be a relevant factor that the ALJ can consider in his credibility analysis, it cannot be the sole reason an ALJ discounts subjective complaints. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Because the other reasons the ALJ gave for rejecting Mr. Bryant's credibility were not clear and convincing the Court cannot affirm the ALJ's credibility analysis based solely on this reason. In any event, because of the ALJ's wholesale rejection of the severity of Mr. Bryant's mental impairments at step two, a reassessment of his credibility is appropriate.

REPORT AND RECOMMENDATION - 10

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings. On remand, the ALJ should (1) reassess the medical opinions of Dr. Heffner, Dr. Washburn, and Dr. Kenderdine, (2) reevaluate Mr. Bryant's credibility, (3) further develop the record as necessary, and (4) redo the five-step disability evaluation process as necessary.

A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **April 28, 2014**. If no objections are filed, the matter will be ready for the Court's consideration on **May 2, 2014**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 14th day of April, 2014.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11